ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>V.<br><br>GUSTAVO J. SÁNCHEZ MONTALVO<br><br>Recurrido | KLCE202300984 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Casos Crim. Núm.: I1VP202200477-481<br><br>Sobre:<br>Art. 93(A) CP, Art. 5.04 Ley 404, Art. 5.15 Ley 404, Art. 6.01 Ley 404 (2 cargos) |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 29 de septiembre de 2023.

Comparece el peticionario, el Pueblo de Puerto Rico, representado por la Oficina del Procurador General, mediante un recurso de *certiorari* y nos solicitan que revisemos una *Resolución* del Tribunal de Primera Instancia, Sala Superior de Mayagüez, notificada el 22 de junio del 2023. En este se determinó que no ameritaba descalificar al Lcdo. Víctor M Souffront Cordero como el representante legal del señor Gustavo J. Sánchez Montalvo.

Por los fundamentos que expondremos a continuación, expedimos el auto y revocamos la *Resolución* recurrida.

**I.**

El 30 de marzo de 2022, el Ministerio Público presentó cinco denuncias contra el Sr. Sánchez Montalvo. Ese mismo día se determinó causa para arresto en todos los cargos. Por su parte, el

Número Identificador

SEN2023 _____

5 de mayo de 2022, el Ministerio Público presentó una *Moción Informativa y en Solicitud de Descalificación del Abogado de Defensa por Razón de Potencial Conflicto de Intereses.*

El Ministerio Público argumentó en su escrito, entre otros asuntos, que se debía descalificar al Lcdo. Souffront Cordero debido a que este **había representado con anterioridad** al Sr. Aragonés Nazario en un **asunto judicial relacionado con los hechos que se le imputan al recurrido**. Explicó, que el Sr. Aragonés Nazario fue víctima en los hechos por los cuales el recurrido está siendo procesado y a la vez se le radicaron cargos por esos mismos hechos.

El Ministerio Público añadió que en su rol como abogado del Sr. Aragonés Nazario, el Lcdo. Souffront Cordero compareció a una vista el 12 de marzo de 2018, en la cual se discutió una orden dirigida a que Aragonés Nazario proveyera una muestra bucal de saliva ante la División de Homicidios del CIC[1] de Mayagüez. Según el Ministerio Público, en esa vista el Lcdo. Souffront Cordero defendió la posición de su cliente, donde se atendió una petición de desacato contra Aragonés Nazario tras haber incumplido con una orden del Tribunal de Primera Instancia.

Finalmente, el Ministerio Público argumentó que la representación previa del Sr. Aragonés Nazario presenta un potencial conflicto de interés en el caso del recurrido, toda vez que hubo comunicaciones confidenciales y privilegiadas que potencialmente afectarían la representación del recurrido, lo cual es contrario los Cánones de Ética Profesional.

En vista de lo anterior, sin el beneficio de la comparecencia del recurrido, el Tribunal de Primera Instancia emitió una

---

[1] Cuerpo de Investigaciones Criminales.

Resolución, la cual fue notificada el 31 de mayo de 2022, mediante la cual ordenó la descalificación del Lcdo. Souffront Cordero.

Por otro lado, el recurrido presentó una Moción de Reconsideración el 10 de junio de 2022. En su escrito, detalló que la participación del Lcdo. Souffront Cordero se limitó únicamente a defender los intereses del Sr. Aragonés Nazario en relación con una orden del Tribunal para tomarle una muestra bucal para propósitos de análisis de ADN. Añadió, que en aquel momento el Sr. Aragonés Nazario no había sido acusado criminalmente ni surgía como testigo del Ministerio Público, por lo que no fue defendido por el Lcdo. Souffront Cordero en un asunto de índole criminal. Con el beneficio de la posición del recurrido, el Tribunal de Primera Instancia declaró *Ha Lugar* la solicitud de reconsideración.

Insatisfecho, el 22 de julio de 2022, el Pueblo, acudió ante este Tribunal de Apelaciones, mediante una petición de *certiorari*, señalándonos el siguiente error:

> *El Tribunal de Primera Instancia abusó crasamente de su discreción al no descalificar al licenciado Souffront Cordero, como abogado de defensa del señor Sánchez Montalvo, a pesar de que su representación legal en este caso está reñida con los Cánones 21 y 38 del Código de Ética Profesional, sobre intereses encontrados y sobre el deber del abogado de evitar hasta la apariencia de conducta profesional impropia.*

El 12 de septiembre de 2022, este tribunal determinó que la decisión del foro de instancia de no descalificar al Lcdo. Souffront Cordero, basada únicamente en los escritos de las partes, era prematura e insuficiente. Es por ello, que se le ordenó al Tribunal de Primera Instancia la celebración de una vista evidenciaria donde la parte peticionaria pudiera presentar la

prueba que entienda pertinente para sostener su petición y la parte contraria pueda refutarla.

La referida vista evidenciaria se llevó a cabo el pasado 1 de junio de 2023. En esta, el Ministerio Público presentó como testigos los siguientes: (1) Sargento Joel Ayala del Valle; (2) Agente Luis Montalvo Báez; y (3) Agente Leslie Candelaria Ramos. Por otro lado, compareció el Lcdo. Souffront Cordero representado por la Lcda. Ana María Strubbe Ramírez. Asimismo, estuvo presente el Sr. Sánchez Montalvo.

Durante el examen directo que el Ministerio Público le hizo al sargento Ayala, quedó meridianamente claro que el Lcdo. Souffront Cordero representó al Sr. Aragonés Nazario durante la fase investigativa de la misma situación de hechos que hoy nos ocupa. El letrado acompañó al Sr. Aragonés Nazario tanto a la comandancia de Mayagüez, como a una posterior vista de desacato. Por su parte, en el contrainterrogatorio, el sargento Ayala reconoció que el Lcdo. Souffront Cordero no representó al Sr. Aragonés Nazario durante la vista de causa para arresto celebrada en marzo de 2022.

Asimismo, el próximo en testificar fue el Agente Luis Montalvo Báez, quien manifestó no haber interactuado con el Lcdo. Souffront Cordero. Por último, la Agente Leslie Candelaria Ramos declaró haber interactuado con el letrado en la comandancia de Mayagüez y, fue ahí donde la agente, partiendo de que el Lcdo. Souffront Cordero compareció como representante legal del Sr. Aragonés Nazario, le entregó la orden judicial y la Resolución del tribunal al letrado. En el contrainterrogatorio, la agente Candelaria afirmó que su intercambio con el Lcdo. Souffront Cordero duró tan solo unos minutos.

Finalizada la vista evidenciaria, el 21 de junio de 2023, notificada el 22 de junio de 2023, el foro de instancia emitió una *Resolución* en la cual denegó la solicitud de descalificación. Posteriormente, el Ministerio Público presentó una solicitud de reconsideración el 30 de junio de 2023, en la cual el Tribunal de Primera Instancia se rehusó a variar su dictamen y lo notificó el 8 de agosto de 2023.

Nuevamente insatisfecho, el 7 de septiembre de 2023, el Pueblo, acudió ante este Tribunal de Apelaciones, mediante una petición de *certiorari*, señalándonos el siguiente error:

> *El Tribunal de Primera Instancia erró al denegar la descalificación del licenciado Souffront Cordero como defensor del señor Sánchez Montalvo pese a que el Ministerio Público, durante la vista evidenciaria efectuada el 1 de junio de 2023, demostró satisfactoriamente que su representación legal exhibe una apariencia de impropiedad y entraña un conflicto de interés, en la modalidad de representación sucesiva adversa, que inciden sobre la confianza que la ciudadanía ha depositado en su sistema judicial.*

Examinados la petición presentada y demás escritos, procedemos a resolver.

## II.

### A. Auto de *Certiorari*

El auto de *Certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307 (2012); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005). La característica distintiva de este recurso se asienta en la discreción

encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el auto de *Certiorari*, nuestros oficios se encuentran enmarcados en el Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B que en su Regla 40 señala los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de esta naturaleza.  Torres Martínez v. Torres Ghigliotty, 175 DPR 83, 97 (2008).  La referida regla dispone lo siguiente:

> A.  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B.  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C.  Si ha mediado prejuicio, parcialidad, o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D.  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E.  Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F.  Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En nuestro ordenamiento jurídico impera la norma de que un tribunal apelativo sólo intervendrá con las determinaciones interlocutorias discrecionales procesales del tribunal sentenciador cuando este último haya incurrido en arbitrariedad o en un craso abuso de discreción. García v. Asociación, 165 DPR 311

(2005); <u>Meléndez Vega v. Caribbean Intl. News</u>, 151 DPR 649, 664 (2000*)*; <u>Lluch v. España Service Sta.</u>, 117 DPR 729 (1986); <u>Valencia Ex Parte</u>, 116 DPR 909 (1986). La discreción, a su vez, está caracterizada por la facultad para decidir distintas formas, esto es, para escoger entre uno o varios cursos de acción. <u>García v. Asociación</u>, *supra*. No obstante, debemos recordar que el ejercicio adecuado de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad. <u>Pueblo v. Ortega Santiago</u>, 125 DPR 203, 211 (2001).

## B. Conflicto de Intereses

El Canon 21 del Código de Ética Profesional les impone a los profesionales del derecho un deber de completa lealtad hacia su cliente, 4 LPRA Ap. IX, C. 21. La finalidad de la referida norma deontológica es reglamentar la conducta profesional que, de alguna forma, pueda poner en peligro el principio de confidencialidad que caracteriza la relación fiduciaria de abogado-cliente, y de esa forma menoscabar la imagen de la justicia y la confianza que tiene el ciudadano en el sistema. <u>In re Báez Genoval</u>, 175 DPR 28, 35 (2008).

El referido canon preceptúa tres situaciones en las cuales todos los togados deben abstenerse de incurrir y, por consiguiente, evitar la representación legal, estas son: (1) cuando en la representación concurran múltiples clientes con intereses encontrados de manera simultánea; (2) cuando se trate de una representación sucesiva adversa; y (3) aceptar representar legalmente a sabiendas de que su juicio profesional puede verse afectado por sus intereses personales. <u>In re Báez Genoval</u>, *supra*, en la pág. 36; <u>In re Torres Viera</u>, 170 DPR 306, 311 (2007). Ante cualquiera de estas situaciones **bastará con que el conflicto de**

**intereses sea potencial**, para que el abogado vulnere la lealtad absoluta que le debe a su cliente. Sánchez Rodríguez v. López Jiménez, 116 DPR 172, 190 (1985) (**Énfasis nuestro**).

La presente controversia nos obliga a enfocarnos, en específico, en la representación sucesiva adversa. El Tribunal Supremo ha establecido que, para que se active la prohibición, es imperativo que exista una relación abogado-cliente dual. In re Soto Cardona, 143 DPR 50, 55-56 (1997); In re Torres Viera, *supra*. Además, también se determinó que, ante un potencial o actual conflicto de intereses, el togado está obligado a renunciar a ambas representaciones. In re Torres Viera, *supra*, en las págs. 311-312. El togado no tendrá la facultad para aducir que no utilizará las confidencias de un cliente en perjuicio del otro. Tal prohibición es insoslayable por lo que los clientes no podrán consentir a la representación conflictiva. In re Báez Genoval, supra, en la pág. 37.

Nuestro máximo foro determinó que, ante la eventualidad de una representación sucesiva adversa, surge una presunción irrefutable de que la información confidencial que haya provisto el cliente anterior al letrado será utilizada por este último en beneficio del nuevo cliente, cuyos intereses son antagónicos a los del cliente anterior. In re Carreras Rovira y Suárez Zayas, 115 DPR 778, 792 (1984).

Ahora bien, al determinar si un abogado incurrió en la representación sucesiva de intereses encontrados, es preciso analizar la conducta de éste a la luz del criterio de relación sustancial. A tenor con dicho criterio, el cliente sólo tiene que demostrar que la controversia legal en la que el abogado comparece en su contra está sustancialmente relacionada con la

causa de acción en la que el abogado previamente le representó. In re Carreras Rovira y Suárez Zayas, *supra*, en la pág. 791.

Por otro lado, el Canon 38 del Código de Ética Profesional (Canon 38), *supra*, puntualiza que los dos valores principales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. Para ello, preceptúa una máxima de suma importancia para el ordenamiento deontológico de la profesión legal: el deber de evitar hasta la apariencia de conducta profesional impropia. Asimismo, ha quedado meridanamente claro en nuestra jurisprudencia que un abogado tiene la obligación de evitar, tanto en la realidad como en la apariencia, la impresión de conducta conflictiva y tienen el deber de lucir puro y libre de influencias extrañas a su gestión profesional. In re Morell Corrada y Alcover García, 158 DPR 791, 811 (2003).

## C. Descalificación de Representación Legal

Los tribunales de primera instancia gozan de amplia discreción para pautar y conducir la tramitación de los procedimientos ante su consideración. Vives Vázquez v. ELA, 142 DPR 117, 141 (1996). La determinación que hace el aludido foro sobre la descalificación de un abogado y de su bufete está impregnada de un alto grado de discreción. Meléndez v. Caribbean Int'l. News, 151 DPR 649, 664-665 (2000).

Ahora bien, nuestro máximo foro determinó que las mociones de descalificación no constituyen de por sí acciones disciplinarias, sino más bien medidas preventivas para evitar posibles violaciones a los cánones de ética profesional. K-Mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633, 637 (1988). Es por ello por lo que los tribunales de instancia pueden evaluar y resolver dichas mociones cuando se presenten en casos que se

ventilan ante sí. K-Mart Corp. v. Walgreens of P.R., Inc., *supra*, en la pág. 638. No obstante, en vista de las implicaciones de la descalificación, tanto en la parte a la que se priva de la representación legal, como en los abogados descalificados, se requiere un trámite riguroso al evaluar la prueba con la que se reclama esa solicitud de descalificación.

Cuando un Tribunal evalúa la procedencia de una moción de descalificación no es necesario tener ante sí prueba sobre una violación ética para que proceda la misma. En estos casos, "la apariencia de impropiedad será utilizada para resolver cualesquiera dudas que surjan sobre posible conflicto de intereses, en favor de la descalificación". In re Carreras Rovira y Suárez Zayas*, supra*, en la pág. 792. En el proceso de evaluación, se deben tomar en consideración los siguientes elementos: (1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad del conflicto de interés involucrado; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados involucrados; (4) la etapa de los procedimientos y su posible efecto en cuanto a la resolución justa, rápida y económica del caso; y (5) el propósito detrás de la descalificación, es decir, si la moción de descalificación está siendo utilizada como un mecanismo procesal para dilatar los procedimientos. Otaño v. Vélez, 141 DPR 820, 828 (1996).

Expuesta la norma jurídica que aplica a los antecedentes fácticos reseñados, procedemos a evaluar.

**III.**

El recurso que atendemos versa sobre el conflicto resultante entre las representaciones sucesivas de los señores Aragonés Nazario y Sánchez Montalvo por parte del Lcdo. Víctor Souffront Cordero. Luego de un análisis ponderado del expediente, entendemos que el **foro primario actuó incorrectamente al determinar que no procedía la descalificación** del referido letrado.

En este caso, mantener al Lcdo. Souffront Cordero como representante legal del Sr. Sánchez Montalvo, resultaría en un **fracaso irremediable a la sana administración de la justicia**. En síntesis, esto se debe a que, previo a asumir la representación del Sr. Sánchez Montalvo (cliente actual), el Lcdo. Souffront Cordero fungió como representante legal del Sr. Aragonés Nazario (cliente anterior) en una cadena de eventos que comienza con una **balacera de carro a carro donde el cliente actual le dispara al cliente anterior** y resulta en la muerte de un tercero que transitaba junto al cliente anterior.

Ahora bien, cónsono con la jurisprudencia de nuestro Tribunal Supremo, para determinar que en efecto **existe un conflicto de intereses** que impida la representación sucesiva adversa, será suficiente que ambas representaciones estén **sustancialmente relacionadas** con la causa de acción en la que el abogado previamente le representó. No queda duda alguna que **ambas representaciones atendían las consecuencias de una misma balacera desatada entre el cliente anterior y el cliente actual**.

Por otro lado, el recurrido alega que no se configuró una representación legal y, en vista de ello, no procede la descalificación. Su argumento se basa en que, al no fungir como

representante legal del cliente anterior en la vista de causa probable para arresto, nunca existió la relación abogado-cliente. Sin embargo, **de la vista evidenciaria se desprende que, el letrado fungió como representante legal del Sr. Aragonés Nazario tanto en una comparecencia en la comandancia de Mayagüez, como en una posterior vista de desacato**.

Asimismo, es menester reiterar que ambas comparecencias respondían a la balacera anteriormente mencionada que se desató entre el cliente anterior y el cliente actual. Siendo así, **la representación legal por parte del Lcdo. Souffront Cordero no tan solo está sustancialmente relacionada, sino que totalmente relacionada**.

En su alegato en oposición, la parte recurrida aduce, entre otras cosas, que no procede la descalificación del Lcdo. Souffront Cordero basándose principalmente en que no existen intereses encontrados entre el cliente anterior y el cliente actual. Sin embargo, ha quedado meridianamente claro que, tanto las comparecencias en representación del Sr. Aragonés Nazario, como la actual representación del Sr. Sánchez Montalvo, responden a una cadena de eventos con **intereses tan adversos que resultan en una balacera** donde un cliente le estaba disparando al otro.

Por último, nuestro Máximo Foro ha reconocido que, bastará con que el conflicto de intereses sea potencial, para que el abogado vulnere la lealtad absoluta que le debe a su cliente. En vista de lo anterior, y a la luz de todo lo antes expuesto, concluimos que el foro de instancia erró en su determinación y, en su lugar, **procede la descalificación del Lcdo. Víctor Souffront Cordero**.

**IV.**

Por los fundamentos antes expuestos, se expide el auto de certiorari y se revoca la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Ordenamos **la descalificación del Lcdo. Víctor Souffront Cordero**. Devolvemos el asunto al foro primario para la continuación de los procedimientos de forma cónsona a lo aquí expresado.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones